### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-60743-RUIZ/STRAUSS

**DEKITA BELLAMY o/b/o A.L.M.,**

      Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

      Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (DE 19) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (DE 22). This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters. (DE 2). I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion (DE 19) be **DENIED** and that Defendant's Motion (DE 22) be **GRANTED**.

### BACKGROUND

I.    **PROCEDURAL HISTORY**

On October 9, 2018, Plaintiff applied for Supplemental Security Income ("SSI") on behalf of her minor daughter, A.L.M. ("Claimant"). (Tr. 155-60). Plaintiff alleged that Claimant's disability began on December 29, 2007—which was also Claimant's date of birth. (Tr. 155). Plaintiff's application was denied initially and upon reconsideration. (Tr. 59-80). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 98-99). Plaintiff's

hearing was held on January 27, 2020, before ALJ James Andres. (Tr. 44-58). Plaintiff and Claimant appeared without counsel and signed forms indicating that they waived their right to representation. (Tr. 46-47, 143-46). On March 27, 2020, the ALJ issued his decision, finding that Claimant was not "disabled" under the Social Security Act ("the Act"). (Tr. 8-29). Plaintiff requested Appeals Council review, and her request was denied on February 2, 2021, thereby leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-4). Consequently, on April 5, 2021, Plaintiff filed this action seeking judicial review of the Commissioner's decision. (DE 1).

## II.    CLAIMANT'S BACKGROUND

Claimant was 10 years old at the time Plaintiff (her mother) applied for SSI on her behalf, 12 years old at the time of the hearing, and 12 years old when the ALJ issued his decision. (Tr. 29, 46, 155). At the time of the hearing, Claimant was in the fifth grade and attended Parkside Elementary. (Tr. 49, 56). In the application, Plaintiff alleged that Claimant had a learning disability. (Tr. 171).

## III.    HEARING TESTIMONY

Plaintiff testified that Claimant was failing in school and being held back because of her learning disability. (Tr. 48). Plaintiff stated that Claimant generally received "C's, D's, and F's" and that her reading was not up to standard. (Tr. 55-57). Plaintiff wanted the school to put Claimant in special needs classes. (Tr. 48, 55). Plaintiff testified that Claimant recently qualified for the Exceptional Student Education ("ESE") program at school. (Tr. 49).

Plaintiff testified that Claimant does not get along with others and gets into fights with her friends "every other week." (Tr. 53-54). According to Plaintiff, Claimant has an anger problem. (Tr. 54). Plaintiff stated that Claimant had a "smart friend" who spoke with her on the phone and

helped her complete homework. (Tr. 51). When asked, Plaintiff noted that Claimant had no major illnesses other than her learning disability and problems getting along with others. (Tr. 53). Plaintiff also noted that Claimant had bad "hygiene" and did not know how to "wash herself and bathe properly." (Tr. 53).

Claimant stated that she was in the fifth grade. (Tr. 49). She had a hard time understanding big words. (Tr. 50). However, she indicated that she did her homework and got good grades. (Tr. 50-51). When Plaintiff stated that Claimant generally received "C's, D's and F's," Claimant disagreed and noted that she received "C's and B's." (Tr. 55-56). Claimant's report card revealed that she had an "F" (in Language Arts), two "C's," and two "B's." (Tr. 57). Claimant agreed that she got into fights and testified that she was expelled from Coral Springs Elementary for fighting. (Tr. 55). However, Claimant stated that she got into fights "last year" and that she did not have problems with her friends anymore. (Tr. 53-54). Claimant stated that she could brush her teeth and take showers and disagreed with Plaintiff's statement that she could not "wash herself and bathe properly." (Tr. 53). Claimant stated that she had no physical limitations and was a cheerleader. (Tr. 52).

## IV.   **MEDICAL EVIDENCE AND OTHER RELEVANT EVIDENCE**

Dahlia Gordon, Psy.D., examined Claimant on February 1, 2019 for a Learning Disability Evaluation. (Tr. 238). On February 13, 2019, Dr. Gordon promulgated a report detailing her findings during the evaluation. (Tr. 237-44). Dr. Gordon described Claimant's affect as "appropriate" and her mood as "good." (Tr. 237). Dr. Gordon administered the Wechsler Intelligence Scale for Children-Fifth Edition ("WISC-V"), Wechsler Individual Achievement Test-Third Edition ("WIAT-III") and the Bender Visual Motor Gestalt Test-Second Edition ("Bender II"). On the WISC-V, Claimant obtained a full scale IQ score of sixty-two (62), which

places her in the extremely low range of intellectual functioning.  (Tr. 240).  On the WIAT-III, Claimant's performance ranged from a kindergarten level up to a third-grade level; this was between the low and the average range.  (Tr. 240).  On the Bender II, Claimant obtained a standard score of sixty-nine (69), which is at the upper limit of the "very low" classification.  (Tr. 241).

Dr. Gordon noted that Claimant was on her phone during the testing, tended to rush, and did not pay attention to the details of many of the tasks she was required to complete.  (Tr. 239). Dr. Gordon also stated that Claimant had an "impoverished vocabulary" that limited her performance on some of the tasks.  (Tr. 242).  She also stated that Claimant's "presentation was not indicative of deficits in adaptive functioning or of an intellectual disability." (Tr. 242).  Thus, Dr. Gordon opined that Claimant's scores were "likely an underestimate of her abilities."  (Tr. 239).  Dr. Gordon also noted that Plaintiff (Claimant's mother) was present during the examination and stated that she needed Claimant to get ESE services so she could qualify for Social Security. (Tr. 239).  Ultimately, Dr. Gordon opined Claimant met the criteria for learning disorder involving deficits in reading, writing, and math skills.  (Tr. 242).  However, she opined that Claimant did not have an intellectual disability, but that her Attention Deficit Hyperactivity Disorder ("ADHD") symptoms and limited vocabulary contributed to her academic limitations.  (Tr. 242).

Adriana Norena, Speech Language Pathologist, performed a Speech and Language Evaluation on Claimant on April 9, 2019.  (Tr. 245-50).  Norena observed that Claimant was attentive and cooperative, made appropriate eye contact, followed verbal commands, responded to greetings, maintained topic, and understood most nonverbal cues.  (Tr. 247).  Norena administered the Oral and Written Language Scales Second Edition ("OWLS-II") and the Goldman-Fristoe Test of Articulation 3 ("GFTA-3"), among other tests.  (Tr. 247).  On the OWLS-II, Claimant obtained a total language standard score of eighty-five (85), which was in the sixteenth (16) percentile.  (Tr.

247).  Norena noted that Claimant had "significant deficits in receptive language."  (Tr. 249).  On the GFTA-3, Claimant obtained a score of 104, which was in the sixty-first (61) percentile.  (Tr. 249).  According to Norena, Claimant was able to produce most words spontaneously and made no errors.  (Tr. 249).  Claimant's performance on the Oral-Motor and Fluency assessments was also within normal limits.  (Tr. 248)

Tonia Lupa, School Psychologist, evaluated Claimant on May 17, 2019.  (Tr. 251).  Ms. Lupa administered the reading portion of the Kaufman Test of Educational Achievement-Third Edition ("KTEA-3").  (Tr. 251).  Claimant showed weaknesses answering literal and inferential reading comprehension questions.  (Tr. 251).  Her scores were in the seventh (7) percentile, which is in the very low range.  (Tr. 251).  Claimant's listening comprehension was also in the very low range (fourth percentile) as she had difficulties comprehending and recalling details of the short passages she listened to.  (Tr. 251).  Claimant's silent reading and word recognition fluency scores were in the thirteenth (13) percentile, which is below average.  (Tr. 251).

State agency physician, Claire Huisentruit, Psy.D., completed an initial disability determination on February 9, 2019.  (Tr. 59-67).  Dr. Huisentruit diagnosed Claimant with a learning disorder (severe) and ADHD (non-severe).  (Tr. 62).  Dr. Huisentruit found that although Claimant had a severe impairment, it did not meet, medically equal, or functionally equal one of the impairments in the Listing of Impairments ("the Listings").[1]  (Tr. 62).  In making this determination, Dr. Huisentruit considered Listings 112.02 (Neurocognitive Disorders) and 112.11 (Neurodevelopmental Disorders).  (Tr. 62).  Dr. Huisentruit also opined that the Claimant's statements regarding her symptoms were not consistent with the medical and non-medical

---

[1] The Listings are found at 20 C.F.R. § 416.925 in appendix 1 of subpart P and describe, for child claimants, impairments that cause marked and severe functional limitations.  20 C.F.R. § 416.925(a).

evidence of record.  (Tr. 64).  Ultimately, Dr. Huisentruit found that Claimant was not disabled. (Tr. 65).

State agency physicians, J. Patrick Peterson, Psy.D., and William Prather, M.D., completed Claimant's disability determination at the reconsideration level in May 2019 (Tr. 69-79).  They diagnosed Claimant with a learning disorder (severe), ADHD (non-severe), and Oppositional Defiant Disorder ("ODD") (non-severe).  (Tr. 73).  Although Claimant had a severe impairment, Dr. Peterson and Dr. Prather found that it did not meet, medically equal, or functionally equal an impairment in the Listings.  (Tr. 74, 76).  In making this determination, they considered Listings 112.02, 112.08 (Personality and Impulse-Control Disorders), and 112.11.  (Tr. 74).  They also found that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not substantiated by the medical evidence.  (Tr. 76).  Ultimately, like Dr. Huisentruit, Dr. Peterson and Dr. Prather found that Claimant was not disabled.  (Tr. 77).

Amy Conlin, the ESE Specialist at Parkside Elementary School completed a request for administrative information from the Social Security Administration on November 2, 2018.  (Tr. 188-90).  Conlin noted that Claimant was below level in reading and math and that Claimant had repeated the third grade.  (Tr. 188-89).  She also noted that Claimant received extra help in a general education classroom.  (Tr. 189).

Colleen Boyle, Claimant's fourth grade teacher at Parkside Elementary School, completed a Teacher Questionnaire on November 10, 2018.  (Tr. 191-98).  At the time, Boyle had only known Claimant for five weeks.  (Tr. 191).  Boyle indicated that Claimant's math and written language abilities were both at a fourth-grade level, which was Claimant's current grade level.  (Tr. 191).

Despite this, Ms. Boyle noted that Claimant had "an obvious problem"[2] in vocabulary, reading comprehension, and math, among other activities. (Tr. 192). However, Boyle stated Claimant had excessive absences and that she had not been able to "adequately determine her true ability [versus] gaps in exposure to academics." (Tr. 192). As for behavior, Boyle stated that although Claimant had a history of behavior problems in her previous school, she had not encountered those problems. (Tr. 194). Boyle noted that "sometimes" Claimant was rude and bossy to other children and tended to shut down when re-directed but would come around if she was given time. (Tr. 194). Boyle believed that Claimant could make progress with regular attendance and practice. (Tr. 196).

## STANDARD OF REVIEW

In reviewing claims brought under the Act, a court's role is limited. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (stating that "the threshold for such evidentiary sufficiency is not high"). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)); *see also Valdez v.*

---

[2] "An obvious problem" was the third rating on a scale of five. The ratings were as follows: "no problem," "a slight problem," "an obvious problem," "a serious problem," and "a very serious problem." (Tr. 192).

*Comm'r of Soc. Sec.*, 808 Fed. Appx. 1005, 1008 (11th Cir. 2020) (same).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I.   THE SEQUENTIAL EVALUATION

Children under the age of eighteen (18) are considered disabled, and are thus entitled to SSI benefits, if they have "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.  To determine whether a child claimant is disabled, the ALJ must undertake the three-step sequential evaluation embodied in 20 C.F.R. § 416.924.  *See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015); *see also Jordan v. Comm'r of Soc. Sec. Admin.*, 470 Fed. Appx. 766, 768 (11th Cir. 2012) (noting that the analytical framework for disability claimants under the age of eighteen is "somewhat different" than the framework for adult claimants).  In making the disability determination, the ALJ must consider all relevant evidence, including objective medical evidence, evidence from medical sources, information from school teachers, family members, and friends, the claimant's statements, and how the claimant functions in different settings.  *See* SSR 09-2p, No. SSA-2008-0062, 2009 WL 396032, at *11.

At the first step of this evaluation, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If the claimant is engaging in substantial gainful activity, they cannot be disabled under the Act; if not, the analysis moves to the second step. *Id.* At the second step, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(c). If the claimant has no medically determinable impairments (or combination thereof) that can be characterized as severe, the claimant cannot be disabled under the Act; if they have a severe impairment, the analysis proceeds to the third step. *Id.* At the third step, the ALJ must determine whether the claimant's severe impairment or combination of impairments meets, medically equals, or functionally equals one of the impairments in the Listings. 20 C.F.R. §§ 416.924(d), 416.925.

To "meet" an impairment in the Listings, the claimant's impairment must satisfy all the criteria of that listing as well as the duration requirement (the impairment must last for a continuous period of twelve months or more). 20 C.F.R. §§ 416.925(c), (d). To "medically equal" an impairment in the Listings, the claimant's impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). To "functionally equal" an impairment in the Listings, the claimant's impairment "must be of listing-level severity" and must limit or restrict their daily functioning. 20 C.F.R. § 416.926a. The Commissioner utilizes six domains of functioning to determine a claimant's daily functioning. 20 C.F.R. § 416.926a(b)(1). These domains are broad categories that "capture all of what a child can or cannot do." *Id.* The domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id.* Functional equivalence is found when a claimant's impairment results in "marked" limitations in two domains or an "extreme" limitation

in one domain.  20 C.F.R. § 416.926a(a).[3]  If a claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment in the Listings and has lasted or will last for a continuous period of twelve months, the claimant is disabled under the Act and is entitled to receive benefits; if not, the claimant is not disabled.  20 C.F.R. § 416.924(d).

## II.   ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that although Claimant had a severe impairment and two non-severe impairments, her impairments did not meet, medically equal, or functionally equal an impairment in the Listings.  (Tr. 12-29).  Thus, the ALJ found that Claimant was not disabled under the Act.  (Tr. 29).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 9, 2018, the date of the application.  (Tr. 12).  At step two, the ALJ found that Claimant had one severe impairment (a learning disability) and two non-severe impairments (ADHD and ODD).  (Tr. 13).  Finally, at step three, the ALJ found that Claimant's impairments, viewed individually or in combination, did not meet, medically equal, or functionally equal the severity of an impairment in the Listings.  (Tr. 13).

The ALJ's step three finding was the lengthiest portion of the analysis.  (Tr. 13-29).  He first analyzed whether Claimant's impairments met the Listings.  (Tr. 13).  The ALJ considered Listings 112.02, 112.08, and 112.11.  (Tr. 13).  Then, he noted that the medical evidence, in addition to the opinion of the State agency physicians, did not establish that Claimant's impairment either met or medically equaled the Listings.  (Tr. 13).

---

[3] Note that a claimant's limitations are evaluated "based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitations."  20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(F)(2).

Next, the ALJ evaluated whether Claimant's impairments functionally equaled an impairment in the Listings. (Tr. 13-29). He discussed the six domains of functioning and determined limitations in each domain. (Tr. 14). In determining these limitations, the ALJ noted that although Claimant's impairments could reasonably be expected to cause her pain or other symptoms, the Claimant's "statements about the intensity, persistence, or functionally limiting effects of [that] pain or other symptoms [was] not substantiated by objective medical evidence." (Tr. 15-16). The ALJ also discussed the persuasiveness of the medical and non-medical evidence in the record. (Tr. 17-22). Regarding the medical evidence, the ALJ found that the opinions of the State agency physicians (Dr. Huisentruit, Dr. Peterson, and Dr. Prather) were persuasive. (Tr. 18-19). However, the ALJ found that Dr. Gordon's evaluation of Claimant, which indicated a "Full Scale IQ score of 62," was not persuasive due to Claimant's lack of effort and potential malingering or exaggeration. (Tr. 17, 20, 22). The ALJ also noted Dr. Gordon's opinion that Claimant's scores were likely an underestimate of her abilities. (Tr. 21). As for non-medical evidence, the ALJ found that the opinion of Claimant's teacher, Boyle, was persuasive because she had "many opportunities to objectively observe how [Claimant's] impairments affected her ability to function in a structured educational environment." (Tr. 19).

Ultimately, the ALJ found that Claimant had either a "less than marked" limitation or "no" limitation in the six domains of functioning. (Tr. 14). Due to these findings, the ALJ determined that Claimant did not have an impairment that functionally equaled an impairment in the Listings. (Tr. 29). Accordingly, the ALJ opined that the Claimant had not been disabled (under the Act) since the date of the application. (Tr. 29).

### III.    ANALYSIS OF THE ISSUES

**A. Whether the ALJ erred in determining that Claimant did not have an impairment or combination of impairments that met a listed impairment.**

Plaintiff contends that the ALJ erred at step three in determining that Claimant's impairment did not meet a listed impairment.  However, I find that the ALJ's decision in this regard is supported by substantial evidence.[4]

At step three in his decision, the ALJ noted that he evaluated three impairments in the Listings: 112.02 (Neurocognitive Disorders), 112.08 (Neurodevelopmental Disorders), and 112.11 (Personality and Impulse-Control Disorders).  (Tr. 13).  Rather than address the ALJ's findings regarding these Listings, Plaintiff solely contends that the ALJ erred in finding that Claimant did not meet Listing 112.05 (Childhood Intellectual Disorders), a listing neither the ALJ nor the State agency physicians discussed.  (DE 19 at 12-15).  Listing 112.05 states the following:

112.05 Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:

   A.  Satisfied by 1 and 2 (see 112.00H):

      1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
      2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.

OR

   B.  Satisfied by 1 and 2 (see 112.00H):

      1. Significantly subaverage general intellectual functioning evidenced by a or b:

---

[4] Plaintiff does not clearly articulate an argument that the ALJ erred in finding that Claimant medically or functionally equaled – as opposed to met – a listed impairment.  However, to the extent she does make such arguments, I find that for the reasons stated below the ALJ's opinion in this regard is also supported by substantial evidence.

      a.   A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

      b.   A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

      a.   Understand, remember, or apply information (see 112.00E1); or

      b.   Interact with others (see 112.00E2); or

      c.   Concentrate, persist, or maintain pace (see 112.00E3); or

      d.   Adapt or manage oneself (see 112.00E4).

20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.05.[5]

Plaintiff argues that the ALJ should have found that Claimant's impairments met Listing 112.05 because Claimant had a full scale IQ score of sixty-two (62) on the WISC-V and because she had a marked or extreme limitation in some of the areas of mental functioning. However, I find that substantial evidence supports the ALJ's decision and that Plaintiff has failed to meet her burden to show that Claimant's impairments met or equaled (medically or functionally) this or another listed impairment. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991) (stating that a claimant has the burden to show that their impairments meet or equal a Listing). Plaintiff is correct that Claimant's full scale IQ score is below the threshold score indicated in the Listings. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.05(B)(1). But Claimant's full scale IQ score is not determinative of whether she meets Listing 112.05. *See Lowery v. Sullivan*, 979 F.2d 835, 837

---

[5] This listing was revised in September 26, 2017 and that revision became effective on January 17, 2017. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept 26, 2016).

(11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."). As the ALJ noted, Dr. Gordon, who administered the test, opined that Claimant's full scale IQ score did not accurately represent her cognitive abilities. (Tr. 242). According to Dr. Gordon, Claimant's scores were likely impacted by her ADHD symptoms ("a tendency to rush, difficulty with sustained focus, limitations with working memory, and a lack of attention to detail"), vocabulary limitations, and limited motivation. (Tr. 242). Dr. Gordon also noted that Claimant could text and knew how to count money. (Tr. 239).

There was also other evidence in the record that was inconsistent with Claimant's full scale IQ score. Despite Plaintiff's claims regarding Claimant's intellectual abilities, Plaintiff completed a report in October 2018 indicating that Claimant could read and understand stories in books or magazines, write a simple story with at least six sentences, understood money, could tell time, knew the days of the week and months of the year, and could add and subtract numbers over ten. (Tr. 176-84). In November 2018, Boyle (Claimant's fourth grade teacher) indicated that Claimant was performing at grade level in math and written language. (Tr. 191). In April 2019, Norena found that Claimant's oral-motor assessment and fluency were within normal limits. (Tr. 249). Norena also found that Claimant had intelligible speech, made no errors in articulation, and scored in the sixty-first percentile (61%) on the GFTA-3 (which measures articulation). (Tr. 249). Although Norena found that Claimant had "significant deficits in receptive language," she also noted that Claimant had strengths in figurative language, lexical ambiguity, and comparing. (Tr. 248). An Individual Educational Plan ("IEP") completed in September 2019 indicated that Claimant could write an opinion piece supporting her point of view and could write informative or explanatory texts to examine a topic or convey ideas with teacher prompting and support. (Tr.

256).  While Claimant scored below her grade level on several math assessments, the IEP noted

that she had familiarity with factors and multiples, could use equivalent fractions as a strategy to

add or subtract fractions, and could understand the concept of angles and measure angles.  (Tr.

256).  The IEP also noted that Claimant did not have "a significant cognitive disability" and that

she did not need "extended school year services."  (Tr. 260, 265).

Regardless of whether Claimant satisfied the IQ requirement, I find that substantial

evidence supports a finding that Claimant does not have "significant deficits in adaptive

functioning."  *See Pinckney v. Comm'r of Soc. Sec.*, 853 Fed. Appx. 347, 350 (11th Cir. 2021)

(stating that evidence regarding the IQ requirement was not dispositive because the claimant did

not exhibit significant deficits in adaptive functioning).  In other words, I find that substantial

evidence supports a finding that Claimant does not have an extreme limitation in one or a marked

limitation in two areas of mental functioning.  A child claimant has a "marked" limitation when

their impairment "interferes seriously with [their] ability to independently initiate, sustain, or

complete activities" and an "extreme" limitation when their impairment "interferes very seriously"

with their ability to do the same.  20 C.F.R. §§ 416.926a(e)(2)(i), 416.926a(e)(3)(i).

In the area of understanding, remembering, or applying information, substantial evidence

supports a finding that Claimant did not have a marked or extreme limitation.  As the ALJ

thoroughly explained,[6] the evidence described above regarding the inconsistencies between

Claimant's full scale IQ score and other record evidence supports that conclusion.  Substantial

evidence also supports a finding that Claimant did not have an extreme or marked limitation in the

---

[6] While the ALJ did not discuss Listing 112.05, he thoroughly discussed the six domains of
intellectual functioning when determining that Claimant did not have an impairment that
functionally equaled Listings 112.02, 112.08, and 112.11.  (Tr. 20-29).  The six domains of
intellectual functioning significantly overlap with the criteria in Listing 112.05(B)(2).  *Compare*
20 C.F.R. 416.926a(b)(1) *with* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.05(B)(2).

area of interacting with others.  Plaintiff noted in her October 2018 report that Claimant had friends of her own age, and generally got along with other adults and teachers.  (Tr. 182).  In her November 2018 report, Boyle stated that Claimant had no problems respecting adults in authority, using appropriate language, taking turns in a conversation, and using adequate vocabulary to express her thoughts.  (Tr. 193).  After Claimant's visit to Noreana in April 2019, Norena noted that Claimant was interactive, able to initiate dialogue, and could take turns.  (Tr. 247).

In the area of concentrating, persisting, and maintaining pace, substantial evidence supports a finding that Claimant did not have a marked or extreme limitation.  During Claimant's April 2019 visit, Noreana stated that Claimant was attentive and cooperative, made appropriate eye contact, followed commands, and maintained topic.  (Tr. 247).  Lastly, in the area of adapting or managing oneself, substantial evidence supports a finding that Claimant did not have an extreme or marked limitation.  Boyle noted in her November 2018 report that Claimant had no problems taking care of her personal hygiene, caring for her physical needs, and using good judgment regarding personal safety.  (Tr. 196).  Dr. Gordon noted that Claimant was able to feed, dress, and bathe herself, and perform self-care tasks in an age-appropriate manner.  (Tr. 239).  It is also worth noting that the three State agency physicians all gave Claimant either a "less than marked" or a "no limitation" rating in the related domains of functioning.  (Tr. 63, 74-75).  Thus, although "the ALJ did not explicitly discuss why [Claimant] did not actually meet Listing 112.05, substantial record evidence supports that [Claimant's] condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [Claimant] was not disabled." *Turberville ex rel. Rowell v. Astrue*, 316 Fed. Appx. 891, 893 (11th Cir. 2009).

**B. Whether the ALJ erred in evaluating Dr. Gordon's Medical Opinion Evidence.**

Plaintiff contends that the ALJ erred in evaluating the evidence from Dr. Gordon.  After a review of the evidence, I find that the ALJ adequately evaluated Dr. Gordon's opinion.

As an initial matter, Plaintiff specifically argues that the ALJ erred in failing to afford "substantial weight" to Dr. Gordon's opinion because she treated Claimant.  However, as Defendant accurately argues, Plaintiff relies on a standard that no longer applies.  Because Clamiant's application for SSI benefits was filed after March 27, 2017, the ALJ could not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c.  Instead, the ALJ had to consider the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict medical opinion or prior administrative medical findings.  *See id.*  Of these five factors, the ALJ only needs to explain "supportability" and "consistency," which are said to be the most important factors.  *See* 20 C.F.R. § 416.920c(b)(2)-(3).

Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).  Thus, an ALJ's analysis must consider "whether the medical source's opinion is

(1) supported by the source's own records and (2) consistent with the other evidence of record." *Diaz-Ortiz v. Comm'r of Soc. Sec.*, 2:20-CV-134-MRM, 2021 WL 4205850, at *5 (M.D. Fla. Sept. 16, 2021); *see also Brooks v. Kijakazi*, 20-14267-CIV, 2021 WL 4973545, at *3 (S.D. Fla. Sept. 12, 2021) ("[T]he ALJ evaluated the extent to which Dr. Brace's opinion was supported by the doctor's own records and consistent with the other evidence of record." (emphasis added)).

I find that the ALJ's evaluation of Dr. Gordon's opinion was adequate under the new regulations. The ALJ detailed specific reasons why he found that Dr. Gordon's evaluation was not persuasive. Although the ALJ noted that Claimant received generally low scores on the WISC-V, WIAT-II, and the Bender II, he noted that based on Dr. Gordon's observations, these scores could be explained by Claimant's inadequate motivation and effort during those evaluations.[7] (Tr. 17, 20-22). Dr. Gordon noted that Claimant's performance on the WISC-V was limited by "a tendency to rush and by a lack of attention to detail," among other things. (Tr. 239, 242). During the Bender II, Dr. Gordon observed that Claimant "replicat[ed] the Bender designs very quickly" without paying attention to the details. (Tr. 239). According to Dr. Gordon, Claimant was on her cell phone during testing and had to be prompted to put it away. (Tr. 239). The ALJ also noted Dr. Gordon's telling observation that Claimant's scores were likely an underestimate of her abilities. (Tr. 16, 239). The ALJ detailed several other portions of the record that were inconsistent with the scores Claimant obtained during the evaluation. (Tr. 17, 19). These included, *inter alia*:

---

[7] The ALJ also opined that Claimant was possibly exaggerating or malingering. (Tr. 20-21). Although the ALJ did not cite to the specific portion of Dr. Gordon's evaluation that provided support for this finding, he was likely referencing Dr. Gordon's observations that (1) Claimant was hesitant in Plaintiff's presence when answering questions; (2) Claimant inquired about the outcome of the evaluation if she "pass[ed]" once Plaintiff left the room; (3) Plaintiff expressed a desire for Claimant to obtain "ESE" services so that she could qualify for Social Security benefits; and (4) Claimant's level of motivation was questionable throughout the evaluation. (Tr. 16-17, 20, 74, 239).

the September 2019 IEP noting that Claimant did not need extended school year services; passing grades in several courses; April 2019 scores on the OWLS-II and GFTA-3 that were within normal limits; and Claimant's ability to text, use the microwave, and count money. (Tr. 17, 22).

Finally, the ALJ's notation that (1) Dr. Gordon had concerns with the accuracy of Claimant's test results and (2) Dr. Gordon listed some of Claimant's skills that belied her test scores shows that the ALJ evaluated both the supportability and consistency of Dr. Gordon's medical opinion. (Tr. 20, 22, 239). As to the consistency factor, the ALJ's reference to findings and test scores from Dr. Gordon's evaluation (and findings and test scores from evaluations by other medical professionals) shows that the ALJ adequately evaluated the "consistency" of Dr. Gordon's opinion with the record evidence in determining the persuasiveness of that opinion. As to the supportability factor, even though the ALJ did not use the word supportability in his decision, his citation to Dr. Gordon's observations that were largely critical of Claimant's test scores shows that the ALJ adequately evaluated the level of "support" Dr. Gordon provided for her opinion in determining the persuasiveness of that opinion. *See Cook v. Comm'r of Soc. Sec.*, 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *1 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 6:20-CV-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (opining that an ALJ need not use the words "supportability" and "consistency" in their decision for a reviewing court to find that they properly evaluated those factors).

Accordingly, I find that the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion (DE 19) and **GRANT** Defendant's Motion (DE 22).

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 15th day of July 2022.

Jared M. Strauss
United States Magistrate Judge